IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FREDRICK GOINGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16-CV-00833-NJR-DGW |
| ) | |
| ANTHONY JONES, ANDRES SPILLER, ) | |
| FRANK EOVALDI, SGT. ENGELAGE, ) | |
| REVA ENGELAGE, MARTHA ) | |
| OAKLEY, REBECCA STEFANI, ) | |
| CHRISTI RAYBURN, JEANNE ) | |
| SAUERHAGE, BRENDA OETJEN, ) | |
| CHARLES COMPTON, CHRISTOPHER ) | |
| STOREY, JUSTIN HECHT, TONYA ) | |
| SMITH, JAMES BEST, JOHN DOES 1-8, ) | |
| and UNKNOWN DEFENDANTS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is currently before the Court on several objections filed by Plaintiff Fredrick Goings to orders entered by Magistrate Judge Donald G. Wilkerson. Specifically, Goings objects to Magistrate Judge Wilkerson's partial denial of his Motion for Leave to File an Amended Complaint (Doc. 87), Magistrate Judge Wilkerson's denial of his motion for recruitment of counsel (Doc. 109), and the amended scheduling order (Doc. 122). The Court discusses each order in turn.

### BACKGROUND

Goings, an inmate of the Illinois Department of Corrections housed at Stateville Correctional Center, filed this lawsuit under 42 U.S.C. § 1983 alleging violations of his constitutional rights as well as Illinois state law (Doc. 2). After threshold review of his

complaint pursuant to 28 U.S.C. 1915A (Doc. 9), Goings was permitted to proceed on the following claims:

> Count 7: A state law battery claim against Big E for grabbing Plaintiff by the neck and shoving his face into the wall;
>
> Count 8: An excessive force claim under the Eighth Amendment against Big E for grabbing Plaintiff by the next and shoving his face into the wall;
>
> Count 10: Deliberate indifference claim against unknown correctional staff, Jones, unknown health care staff assigned to 5 gallery in North II cell house for refusing Plaintiff medical care after he was attacked by Big E and incarcerated in a cell that elevated his blood pressure;
>
> Count 12: Fourth Amendment violation against Spiller and Big E for conducting an "unreasonable search" of Plaintiff's body by subjecting him to multiple strip searches and forcing him to spread his butt cheeks; and
>
> Count 14: Eighth Amendment deliberate indifference claim against Big E, Jones, unknown correctional staff and unknown medical staff for depriving Plaintiff of access to his blood pressure medication.

On March 16, 2017, Goings filed a motion for leave to amend his complaint to add a number of claims and defendants (Doc. 58). Magistrate Judge Wilkerson denied the motion in part, disallowing certain claims that he found to already have been articulated in the original complaint, had no basis in the law, or were insufficiently pleaded (Doc. 76). Goings filed an objection to Magistrate Judge Wilkerson's order on October 18, 2017 (Doc. 87), which the Court construes as an appeal of the order pursuant to Rule 72 of the Federal Rules of Civil Procedure.

On January 2, 2018, Goings filed a motion for recruitment of counsel arguing that the case is complex and will require substantial discovery, he has limited access to legal

research and his legal materials in prison, and his reasonable attempts to secure counsel have failed (Doc. 95). On January 16, 2018, Magistrate Judge Wilkerson denied the Motion for Recruitment of Counsel without prejudice, finding that while Goings has made reasonable attempts to obtain counsel on his own, he is more than competent to litigate his own claims at this time due to his education, training in the legal system, and ability to understand the legal issues and litigation process (Docs. 96). Goings filed an appeal of Magistrate Judge Wilkerson's Order on February 26, 2018 (Doc. 109).

Finally, on March 30, 2018, Goings filed an objection to the Amended Scheduling Order (Doc. 121), which the Court again construes as an appeal under Rule 72, arguing he needs additional time to produce his initial disclosures to Defendants (Doc. 122).

## DISCUSSION

The Court may modify or reverse a decision of a magistrate judge on a non-dispositive issue upon a showing that the magistrate judge's decision is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). *See also* SDIL-LR 73.1(a). A decision is clearly erroneous "only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997); *see also Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988) ("To be clearly erroneous, a decision must strike [the Court] as more than just maybe or probably wrong; it must . . . strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish.").

I. **Motion for Leave to Amend the Complaint**

Goings appeals several rulings within Magistrate Judge Wilkerson's September

28, 2017 Order granting in part and denying in part his Motion to Amend the Complaint.

> **Count Four: A violation of § 501.30 of the Illinois Department of Corrections Rules prohibiting corporal punishment against Lt. Frank Eovaldi for his wrongful use of force that amounted to corporal punishment.**

Goings objects to Magistrate Judge Wilkerson's decision not to allow a claim against Defendant Eovaldi ("Big E") for his "wrongful use of force that amounted to corporal punishment in violation of Ill. Admin. Code. Tit. 20 § 501.30." Goings disagrees with the conclusion that prison regulations, as codified in the Illinois Administrative Code, were never meant to confer rights on inmates or serve as a basis for constitutional claims, but rather were intended to guide prison officials in the administration of prisons. Goings criticizes Magistrate Judge Wilkerson's reliance on *Ashley v. Snyder*, 739 N.E.2d 897, 902 (Ill. App. Ct. 2000), an Illinois state appellate court case, because it is not controlling precedent for this Court.

This Court notes that the same language in *Ashley* that was cited by Magistrate Judge Wilkerson has been cited with approval by the Seventh Circuit Court of Appeals in determining that Illinois courts do not infer a damages remedy from statutes regulating the Department of Corrections. *See Ambrose v. Godinez,* 510 F. App'x 470, 471 (7th Cir. 2013) (citing *Ashley*, 739 N.E.2d at 902, and explaining that Unified Code of Corrections was "designed to provide guidance to prison officials in the administration of prisons," not to confer rights on inmates). Moreover, Goings's assertion that this Court should not rely on an Illinois state court's interpretation of the regulations is wrong. *See Gresham v. Peterson,* 225 F.3d 899 (7th Cir. 2000) ("federal courts should defer to state court interpretations of state laws"). Because a violation of the Illinois

Administrative Code, which regulates the Department of Corrections, does not give rise to a constitutional claim or a claim under state law, Magistrate Judge Wilkerson properly determined that Count Four had no basis in the law.

> **Count Five: Failure to protect claim against all unknown defendants who stood by and watched Lt. Frank Eovaldi commit an assault and battery on Plaintiff and failed to intervene.**

With regard to Count 5, Magistrate Judge Wilkerson found that allowing Goings to proceed on this claim would be futile, as he failed to allege sufficient facts to plead a failure to protect claim when there was no indication the unknown defendants actually witnessed any actions taken by Eovaldi or had time to prevent the harm.

In his proposed amended complaint, Goings alleges that he was handcuffed in back and escorted to the North II Cell House, where he was met by at least six men he presumed to be correctional officers, including Defendant Eovaldi. He claims that, while he was handcuffed in back, Eovaldi grabbed him by the neck and squeezed really hard, then shoved his face and forehead into the brick wall. He then asserts in Count 5 that the unknown correctional officers who watched Eovaldi assault him failed to intervene and are liable for failing to protect him. On appeal, Goings argues that while Eovaldi was swift with his actions, he "did not move at the speed of light."

An officer can be liable for failure to intervene if he had reason to know that excessive force was being used by another officer (or any other constitutional violation was being committed) and if he had a reasonable opportunity to prevent the harm from occurring. *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005). "A realistic opportunity to intervene may exist whenever an officer could have called for a backup,

called for help, or at least cautioned the violating officer to stop." *Miller v. City of Harvey*, No. 13–CV–9257, 2014 WL 3509760, at *2 (N.D. Ill. July 15, 2014) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)).

In this case, the Court finds Magistrate Judge Wilkerson did not clearly err in finding this claim to be futile when there was no realistic opportunity for the officers to intervene. Goings claims Eovaldi grabbed his neck and squeezed, then shoved his face and forehead into a brick wall. Goings admits that Eovaldi acted swiftly. Under these circumstances, the contact between Eovaldi and Goings was not so prolonged that the other officers realistically could have taken any action to intervene in the situation. *See Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997). Thus, Magistrate Judge Wilkerson's decision was not clearly erroneous.

> **Count 7:** Eighth Amendment deliberate indifference claim against Defendants Smith, Rayburn, Sauerhage, and Oetjen for depriving Plaintiff of access to his blood pressure medication.

Goings next objects to Magistrate Judge Wilkerson's finding that his deliberate indifference claim against Defendants Smith, Rayburn, Sauerhage, and Oetjen in Count 5 was futile. Goings claims he adequately alleged that he complained to these Defendants about the deprivation of his blood pressure medication.

"Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, acts in a manner contrary to the recommendation of specialists or delays a prisoner's treatment for

non-medical reasons, thereby exacerbating his pain and suffering. *Id.* at 777.

Here, Goings alleges he was denied his blood pressure medicine for days while he was in segregation in cell 503 (Doc. 79, p. 17). He claims he experienced dizziness, headaches, numbness, blurred vision, difficulty speaking, and confusion as a result of the harsh and cruel conditions he was subjected to (*Id.*). He also asserts he suffered a mild stroke as a result of Defendants' refusal to give him access to his medicine (*Id.*). He then claims he complained to Defendants Smith, Rayburn, Sauerhage, and Oetjen (among others) "about his injuries and his pain and suffering he endured from the battery inflicted upon him by Lt. Frank Eovaldi."(*Id.*, p. 18).

Because Goings never alleges that he complained to Defendants Smith, Rayburn, Sauerhage, and Oetjen about the lack of access to his blood pressure medication, Magistrate Judge Wilkerson's determination that a deliberate indifference claim against these Defendants would be futile was not clearly erroneous.

**Count 8:** **Fourth Amendment claim against Does 1-9 for conducting excessive strip searches unrelated to any penological interest.**

As to Count 8, Magistrate Judge Wilkerson determined that Goings failed to allege that any John Doe Defendants were personally involved in "excessive strip searches" because it was unclear whether any one John Doe Defendant was involved in *more than one of the strip searches*. Magistrate Judge Wilkerson relied on *Peckham v. Wisconsin Department of Corrections*, in which the Seventh Circuit stated: "[G]iven the considerable deference prison officials enjoy to run their institutions it is difficult to conjure up too many real-life scenarios where prison strip searches of inmates could be

said to be unreasonable under the Fourth Amendment." *Peckham v. Wisconsin Dep't of Corr.*, 141 F.3d 694, 697 (7th Cir. 1998); *but see Fillmore v. Page*, 358 F.3d 496, 505 (7th Cir. 2004) (finding the plaintiff could recover if he could show the strip search was conducted in a harassing manner intended to humiliate and inflict psychological pain).

Goings argues that while these Defendants were not present for all of the strip searches, "information to one prison official is information to all prison officials." Goings cites no authority for this assertion. He also argues that the words, actions, inactions, mannerisms, and body language of the John Doe Defendants established that they acquiesced in the conduct complained of. Even if true, this does not change the fact that Goings failed to allege that any one of the John Doe Defendants were personally involved in conducting excessive strip searches. *See Terry v. Spencer*, No. 17-2331, 2018 WL 1978927, at *3 (7th Cir. Apr. 27, 2018) (a plaintiff in a Section 1983 case "must explain how each [Defendant] personally participated in violating his rights"); *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (42 U.S.C. § 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). Thus, Magistrate Judge Wilkerson's decision was not clearly erroneous.

**Count 9:    Intentional infliction of emotional distress against all Defendants**

As to Count 9, Magistrate Judge Wilkerson found that Goings failed to set forth sufficient particularized allegations to state a claim against Defendants for intentional infliction of emotional distress. Specifically, Goings failed to adequately allege how each named Defendant engaged in "extreme and outrageous" conduct intended to cause him

severe emotional distress. Goings argues his claim is not futile, as he alleged Defendants engaged in unlawful and intentional conduct that caused him severe emotional distress.

To state a claim for intentional infliction of emotional distress under Illinois law, a plaintiff must allege that the defendant's conduct was extreme and outrageous, the defendant knew it was highly probable that his conduct would cause the plaintiff severe emotional distress, and the conduct did in fact cause the plaintiff severe emotional distress. *See, e.g., Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010). Liability for intentional infliction of emotional distress "does not extend to mere insult, indignities, threats, annoyances, petty oppressions or trivialities" and can attach "only in circumstances where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Davenport v. City of Chicago*, 653 F. Supp. 2d 885, 895 (N.D. Ill. 2009), *aff'd sub nom. Davenport v. Dovgin*, 545 F. App'x 535 (7th Cir. 2013). "The distress inflicted must be so severe that no reasonable person could be expected to endure it." *Id* (citation omitted).

Here, Goings alleges that "each defendant engaged in unlawful, and intentional conduct as shown through their actions, words, gestures, conduction, or inaction, or they acquiesced in the violation of Plaintiff's rights. Because of the defendants' conduct—individually and collectively, Plaintiff suffered severe and extreme emotional distress." (Doc. 79, p. 29). As noted by Magistrate Judge Wilkerson, however, Goings failed to set forth particularized allegations of extreme and outrageous conduct as to each individual Defendant. Furthermore, Goings makes no allegations whatsoever that each Defendant knew it was highly probable his conduct would cause Goings severe

emotional distress. *See Terry*, 2018 WL 1978927, at *3; *Sheik–Abdi*, 37 F.3d at 1248. For these reasons, Magistrate Judge Wilkerson did not err in finding this claim futile.

  **Count 10:  False imprisonment against Lt. Frank Eovaldi, Andrew Spiller, Does 1-9, et al.**

In Count 10, Goings claims he was falsely imprisoned insofar as he was subjected to repetitive confinement in segregation without being issued a disciplinary ticket. Magistrate Judge Wilkerson determined this claim would be futile, as the Seventh Circuit has determined that prison officials have discretion to place inmates in administrative segregation, and may assign inmates to any prison within the Department of Corrections without infringing upon a constitutional right. Because Goings was lawfully convicted and sentenced, there is no basis on which he can maintain a false imprisonment claim.

Goings argues that this conclusion was wrong because, while it is accurate he was convicted and sentenced, he still has a liberty interest when conditions in segregation are harsh. While that may be true, such a claim would not lie in a state law false imprisonment claim, which requires an unlawful restraint of an individual's personal liberty. *Lopez v. Winchell's Donut House*, 466 N.E.2d 1309, 1311 (Ill. 1984). Here, Goings's period in segregation was not unlawful, at least not in the sense that he was imprisoned against his will as required to meet the elements of the common law tort. *See id.*

The Court finds that the claim Goings seeks to make here is more accurately framed as a due process violation. Under certain limited circumstances, an inmate punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–

98 (7th Cir. 2009). Assignment to disciplinary segregation can implicate a liberty interest if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). With regard to segregation, the Court should consider the length of segregation and the conditions endured. *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013); *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009) ("a liberty interest may arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh"). For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). The short duration of disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *Martinez v. Bebout*, No. 14-CV-453-JPG, 2014 WL 2109778, at *3 (S.D. Ill. May 20, 2014).

Here, Goings alleges he spent "days" in cell 503. While he does not specify the number of days, he claims that he had no access to his medicine for "days," that cell 503 had a light that stayed on 24 hours a day causing him to lose sleep for at least three days, and that he was thereafter transferred to cell 835 where he remained in segregation for an two additional weeks. A reasonable inference from these allegations is that Goings experienced a relatively short period of disciplinary segregation, which does not implicate a liberty interest regardless of the conditions of that confinement. Without a liberty interest at stake, there can be no due process violation. Thus, Magistrate Judge

Wilkerson did not err in declining to allow Goings to proceed on this claim.

**Count 11:    Campaign of harassment against all Defendants**

In this Count, Goings alleges Defendants instituted a "campaign of harassment" against him for filing grievances and engaging in other constitutionally protected conduct to redress Defendants' conduct. On threshold review of this count in the original complaint (filed in Case No. 16-439-SMY), District Judge Staci Yandle found that the claim was more properly stated as a First Amendment retaliation claim. Nevertheless, Judge Yandle noted that while Goings generally alleged that he filed grievances, he did not identify the specific grievances by date or incident that drew the alleged retaliation. Having failed to identify his protected conduct, Judge Yandle found Goings's claim must be dismissed. On review of his proposed amended complaint, Magistrate Judge Wilkerson agreed Goings was attempting to bring a First Amendment retaliation claim against Defendants, but found there were no allegations sufficient to establish the elements of such a claim.

To demonstrate a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Here, Goings alleges that he filed grievances and engaged in "other lawful conduct" to redress the issues that were "systematically being perpetuated against him," Defendants engaged in adverse conduct to stop him from repeating his First

Amendment activity in the future, and the fact that he was exercising constitutionally protected conduct was a motivating factor for Defendants' retaliatory actions. Goings also now asserts he filed numerous grievances on particular dates regarding Defendants' conduct. Specifically, Goings refers to grievances filed regarding Defendants: denial of his access to his personal and legal property; challenge of his access to a legal book and a religious publication; failure to protect him; harassment and denial of medical care; intentional infliction of emotional distress; excessive strip searches; interception or withholding of Court documents; tampering with the process for his grievances; false imprisonment and violation of his due process rights; and confiscation his grievances and legal files, all in an attempt to impede his First Amendment activity in the future.

Although Goings appears generally to have alleged the elements of a retaliation claim, he has not made any allegations regarding the conduct of *each individual Defendant*. As discussed above, a plaintiff in a Section 1983 case "must explain how [Defendants] each personally participated in violating his rights." *Terry*, 2018 WL 1978927, at *3; *Sheik–Abdi*, 37 F.3d at 1248. The proposed amended complaint refers only to "Defendants" and does not identify how each individual Defendant retaliated against him. Thus, it was not clearly erroneous for Magistrate Judge Wilkerson to find this claim futile.

II.     **Appointment of Counsel**

On January 16, 2018, Magistrate Judge Wilkerson denied Goings's Motion for Recruitment of Counsel without prejudice, finding that while Goings has made reasonable attempts to obtain counsel on his own, he is more than competent to litigate his own claims at this time due to his education, training in the legal system, and ability

to understand the legal issues and litigation process (Docs. 96). Goings filed an appeal of Magistrate Judge Wilkerson's Order on February 26, 2018 (Doc. 109). Goings argues that Magistrate Judge Wilkerson failed to consider whether his litigation capabilities were sufficient for conducting the discovery necessary in this particular case, the complexity of his legal claims, his inability to sufficiently investigate and research the case from prison, or his ability to locate and review key evidence.

A plaintiff has no constitutional or statutory right to counsel in a federal civil proceeding. *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (citing *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)). Therefore, on a 28 U.S.C. § 1915(e)(1) motion, it is entirely within the Court's discretion whether or not to recruit counsel for civil litigants. *Id.* If a plaintiff makes a reasonable attempt to secure counsel, the court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). This inquiry does not focus solely on the plaintiff's ability to try his case—it also includes other "tasks that normally attend litigation" such as "evidence gathering" and "preparing and responding to motions." *Id.* When ruling on a motion to recruit counsel, the court should take account of all evidence in the record relevant to the plaintiff's capacity to litigate. *Id.*

Here, prior to his incarceration, Goings was a practicing attorney with a significant amount of education and training in the legal system. Based on these facts, the Court finds Goings has the ability to understand both the litigation process and legal

issues in his case. While he has named many defendants, the claims themselves—battery, excessive force, deliberate indifference, and an unreasonable search—are not "overly complex." *See Bracey v. Grondin*, 712 F.3d 1012, 1017-18 (7th Cir. 2013) (finding excessive force and spoliation claims were not too legally complex for *pro se* litigant). Although Goings asserts that counsel would be helpful in the discovery process given his restrictions in prison, that "does not mean that the case itself [i]s so overly complex that counsel [i]s required." *Romanelli v. Suliene*, 615 F.3d 847, 854 (7th Cir. 2010) (internal quotations omitted). The mere fact that Goings is an inmate is not sufficient to show an inability to conduct discovery. *See Bracey*, 712 F.3d at 1018 ("[A]ll inmates confront the discovery restrictions facing [the plaintiff]."). Thus, Goings has not established that there are sufficient discovery obstacles that prevent him from competently litigating his claims. Further, the Court notes that discovery is just now commencing and dispositive motions are not due until February 2019. Given his background as an attorney, the Court finds that Goings is competent to litigate his claims on his own at this stage in the proceeding. His objection is overruled.

## III. Scheduling Order

On March 30, 2018, Goings filed an objection to the Amended Scheduling Order (Doc. 121), arguing he needs additional time to produce his initial disclosures to Defendants (Doc. 122). Goings followed up this objection by filing a Motion for Extension of Time (Doc. 124), which was granted by Magistrate Judge Wilkerson (Doc. 125). Thus, that portion of Goings's objection is moot.

Goings also objects to the number of interrogatories and requests for production

of documents the Amended Scheduling Order permits him to serve on Defendants, to the extent this number differs from the number permitted by the Federal Rules of Civil Procedure. Rule 33 permits no more than 25 written interrogatories or requests for product *unless otherwise ordered by the court*. FED. R. CIV. P. 33. While the Federal Rules set no limit on the number of requests for production a party may serve, Rule 34(a) does reference Rule 26(b), which allows the Court to limit the frequency and scope of discovery. *See* FED. R. CIV. P. 34(a), 26(b).

Here, the Amended Scheduling Order allows each party to serve 15 interrogatories, 15 requests for production of documents, and 10 requests for admission. Importantly, the Order states that these limits "may be increased for good cause shown." Because the Federal Rules allow a Court to limit discovery in a case, and because the Amended Scheduling Order permits the parties to file a motion to increase the number of requests it may serve, the Court does not find the decision to be "clearly erroneous or contrary to law." *See* 28 U.S.C. § 636(b)(1)(A). Goings's objection is overruled.

## CONCLUSION

For these reasons, Plaintiff Fredrick Goings's objections (Docs. 87, 109, 122) are **OVERRULED**, and Magistrate Judge Wilkerson's orders are **AFFIRMED**.

**IT IS SO ORDERED.**

DATED:   May 7, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**